IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC LYNN FERRELL,

    Petitioner,

      v.

FREDERICK HEAD, Warden,
Georgia Diagnostic and Classification
Prison,

    Respondent.

CIVIL ACTION FILE

NO. 1:02-CV-2896-TWT

OPINION AND ORDER

    This is a habeas corpus action in a death penalty case. It is before the Court on the First Amended Petition for Writ of Habeas Corpus by a Person in State Custody [Doc. 34]. For the reasons set forth below, the First Amended Petition is DENIED.

I. BACKGROUND

    The Petitioner Eric Lynn Ferrell was convicted in 1988 of the murder of his 72 year old grandmother and his 15 year old cousin. Ferrell spent the night of December 29, 1987, at the DeKalb County home of his grandmother, Willie Myrt Lowe. Ferrell's cousin, Tony Kilgore, was also staying with Ms. Lowe that night. Early the next morning, Ferrell returned to the nearby home of his parents. He then obtained a ride with a friend to meet with his probation officer so that he could pay a past-due

probation fee.  Ferrell told the friend that he would be able to pay for the gasoline for the trip because he had recently received $900 in compensation from Rockdale County for wrongful detention.  Ferrell paid his past-due probation fee, bought a six-pack of beer for his friend and himself, and then called home.  A neighbor answered his home phone and informed Ferrell that his grandmother was "kinda sick."  Ferrell, however, told his friend that he had been informed that someone had hurt his grandmother.  Ferrell speculated to the friend that the mafia might have hurt his grandmother in retaliation for a killing recently committed by his uncle.  Ferrell returned to his grandmother's house, where the bodies of his grandmother and cousin had been discovered.  Each had been killed by two small caliber gunshots to the head. A large quantity of cash and rolled coins, which Ms. Lowe generally kept in her home, was missing.

Ferrell and other relatives gave witness statements at the police station.  Ferrell initially stated that he had left his grandmother's house that morning to go to work and did not remember anything unusual other than two hang-up telephone calls and some noises the night before.  He did recall seeing a blue car in front of the house as he left in the morning. Ferrell was not a suspect at this time. Instead, the police suspected this was a revenge-type killing by members of the family of a man murdered by two of Ferrell's uncles a few weeks earlier. This initial suspicion was

shared by most members of Ferrell's family, and was consistent with the evidence at the scene. The home had not been ransacked, the police at first did not realize the victims had been robbed, and the victims had been killed execution style by gunshot wounds to the head at very close range.

When Ferrell was questioned again later that day, the detectives learned that he was on probation for forgery and that he had been arrested for an unrelated murder. For their own safety, the detectives then asked Ferrell what he had in his pockets. Ferrell produced a large wad of money totaling over $500, which the detectives returned to him. Ferrell said that he had been paid $450 that morning for a roofing job. One of the detectives left and attempted to verify the source of the money. Ferrell's mother could not recall anyone coming by the house that morning to give Ferrell a large sum of money. The man for whom Ferrell had planned to work that day was contacted, and he stated that Ferrell had worked very little in the last two weeks, knew that he had no work scheduled that day, and usually had little or no money. The employer stated he often had to buy Ferrell's lunch for him. The detective also discovered that Ferrell's grandmother usually kept a large amount of money in her house, but that there was none in the house after her death.

One of Ferrell's uncles was interviewed and stated that before he was arrested he left a handgun with one of Ferrell's brothers. The detectives obtained a search

warrant for the Ferrell residence.  During the search of Ferrell's bedroom the police found a .22 caliber handgun that was shown at trial to be the murder weapon.  They also found two boxes of .22 caliber shells.  Four shells were missing.  The police then arrested Ferrell for the murders.  In a search incident to his arrest, four .22 caliber shell casings matching the ammunition found in his bedroom and bearing markings consistent with having been fired by the murder weapon were discovered in Ferrell's back pocket.

Ferrell asked to speak with detectives after his arrest and the discovery of the spent .22 caliber shells in his pocket.  At that time and in his later trial testimony, Ferrell gave the following account of the murders.  As he was leaving his grandmother's house, two unknown men confronted Ferrell and demanded to see his uncle, who had killed a man six days earlier.  When the men pushed their way into the house, Ferrell pulled out his .22 caliber handgun.  The men forced him to drop his handgun by pulling out a .38 caliber handgun and a sawed-off shotgun.  The two men searched the house, murdered Ferrell's grandmother and cousin with Ferrell's .22 caliber handgun, threw the still-loaded weapon on the bed next to the victims, put a large sum of money in Ferrell's pocket, told him to bring his uncle to them, and left the house.

In 1988, Ferrell was tried for the murders in the Superior Court of DeKalb County.  He was convicted of two counts of malice murder for the fatal shooting of his 72-year-old grandmother and his 15-year-old cousin.  He was also convicted of one count of armed robbery and one count of possession of a firearm by a convicted felon.  Ferrell was sentenced to death on September 17, 1988.  Ferrell moved for a new trial, and hearings on this motion were held on January 4, 1989, and April 10-11, 1990.  The trial court denied Ferrell's motion for new trial, and the Supreme Court of Georgia affirmed his convictions and sentences on March 15, 1991.  Ferrell v. State, 261 Ga. 115 (1991).  On October 21, 1991, the United States Supreme Court denied Ferrell's petition for writ of certiorari.  Ferrell v. Georgia, 502 U.S. 927 (1991), reh'g denied, 502 U.S. 1051 (1992).

Ferrell filed his initial state habeas corpus petition on July 19, 1995, and an amended petition on March 15, 1999. An evidentiary hearing was held on July 13, 1999.  On February 8, 2001, the state habeas court vacated Ferrell's convictions and death sentence on the grounds of ineffective assistance of appellate counsel and a conflict of interest on the part of trial counsel.  The warden appealed to the Supreme Court of Georgia, and the Supreme Court reversed the order of the state habeas court and reinstated the Petitioner's convictions and sentences.  Head v. Ferrell, 274 Ga. 399 (2001).  Ferrell filed this federal habeas corpus action on October 21, 2002.  The

Petitioner's motion for leave to conduct discovery was denied. The case is before the Court for a ruling on the merits.

## II. <u>STANDARD FOR HABEAS CORPUS RELIEF</u>

Pursuant to 28 U.S.C. § 2254(d), a federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A district court evaluating a habeas corpus petition under 28 U.S.C. § 2254(d)(1) "'should survey the legal landscape' at the time the State court adjudicated the petitioner's claim to determine the applicable Supreme Court authority; the law is 'clearly established' if Supreme Court precedent would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1075 (1999). A state court decision is "contrary to" clearly established federal law when it applies a rule that contradicts the governing law as set forth in cases before the Supreme Court of the United States. <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). "A state-court decision will also be contrary to [the Supreme]

-6-

Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 406. The Supreme Court in Williams held "that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within the provision's 'unreasonable application' clause." Id. at 409. The Supreme Court also held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id.

### III.  DISCUSSION

The Petitioner asserts fourteen distinct and independently dispositive claims. It appears that counsel for the Petitioner assert what they consider to be the strongest claims first and the remaining claims in descending order. The Court will address them in the same order.

### A.    Claim I – Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right to counsel. Strickland v. Washington, 466 U.S. 668, 684-85 (1984); Gideon v. Wainwright, 372 U.S. 335 (1963); Powell v. Alabama, 287 U.S. 45 (1932). As noted in Strickland, "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth

Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." Strickland, 466 U.S. at 685 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 275-76 (1942)). For that reason, the Supreme Court has long held that the right to counsel contemplates the right to the effective assistance of counsel. Id.; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).

In Strickland, the Supreme Court set out the two components of a claim of ineffective assistance of counsel. Strickland, 466 U.S. at 687; see also Wiggins v. Smith, 539 U.S. 510, 521 (2003).[1] A petitioner must first show that counsel's performance was deficient. Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 687. This requires a showing that counsel's representation "fell below an objective standard of reasonableness." Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 688. The petitioner must then also show that counsel's deficient performance prejudiced the defense. Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 687. Unless the Petitioner makes both showings, it cannot be said that his capital sentence resulted from a breakdown in the adversarial process that denied him effective counsel.

---

[1]Wiggins and Williams v. Taylor, 529 U.S. 362 (2000), had not been decided at the time that the Supreme Court of Georgia considered the decision at issue in this case. These two decisions, however, do not constitute "new law," as the United States Supreme Court clearly intended each decision to apply and expound on the standard articulated in Strickland.

At the motion for new trial, new counsel for the Petitioner asserted a claim of ineffective assistance of trial counsel.  The motion for new trial was denied and the issue of ineffective assistance of counsel was again raised on the Petitioner's direct appeal to the Supreme Court of Georgia.  In affirming the Petitioner's conviction and death sentence, the court stated:

> Ferrell was represented by two experienced public defenders, one of whom had spent nine years as a criminal prosecutor. They filed numerous pre-trial motions, investigated the case legally and factually, conducted an extensive voir dire examination of prospective jurors, cross-examined state's witnesses, presented defense witnesses, and delivered substantial closing arguments.

Ferrell v. State, 261 Ga. at 119.  The court then correctly stated the two-pronged test from Strickland.  The court identified the alleged errors of trial counsel in the guilt-innocence phase of the trial.  It then held:

> It is not necessary to address specifically and individually each and every one of these numerous instances of challenged trial tactics.  It is sufficient to note that strategic choices made after thorough investigation are virtually unchallengeable.  The trial court found, and the evidence supports the finding, that trial counsel thoroughly investigated the case and prepared for trial.  Ferrell has shown nothing that would demonstrate that his trial attorneys failed to exercise reasonable professional judgment in their handling of the case.

Id. at 120 (citations and quotation marks omitted).  With respect to the sentencing phase of the trial, the court held:

> Trial counsel interviewed numerous potential witnesses in mitigation, many of whose names had been furnished by the defendant.  Only a very

few could say anything favorable on the defendant's behalf, and these testified at the trial. Although we do not find deficient attorney performance, we also note that Ferrell has not since the trial discovered witnesses whose testimony, if presented at the sentencing phase of the trial, in reasonable probability would have caused the sentencer to conclude that the balance of aggravating and mitigating circumstances did not warrant death. Ferrell has not shown he was denied effective assistance of counsel.

Id. (citations and quotation marks omitted). Thus, the ineffective assistance of trial counsel claim has been presented to the state courts and a ruling obtained on the merits. The claim is, thus, preserved for review in this action.[2]

In the direct appeal, the Supreme Court of Georgia accurately set forth the controlling law from Strickland. The proper inquiry here, then, is whether the Supreme Court of Georgia relied on an objectively unreasonable application of federal law or determination of facts in denying the Petitioner's claim for ineffective assistance of trial counsel. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410 (emphasis in original); see also Wiggins, 539 U.S. at 520 (requiring that "unreasonable" state

---

[2]Counsel for the Respondent conceded this at the hearing on the merits of the petition. It is, however, somewhat confusing because the title to Claim I refers only to ineffective assistance of appellate counsel. It is apparent--if not clear--from the content of the claim and the briefing that the Petitioner is also asserting a claim of ineffective assistance of trial counsel.

court decision be "more than incorrect or erroneous") (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)).

The Petitioner contends that the Supreme Court of Georgia's holding constitutes an unreasonable application of the standards for effective assistance as established in <u>Strickland</u> and outlined in <u>Williams</u> and <u>Wiggins</u>.  In <u>Strickland</u>, the Supreme Court set forth a standard for deference given to decisions to limit investigation based on defense strategy:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

<u>Strickland</u>, 466 U.S. at 690-91; <u>quoted in</u> <u>Wiggins</u>, 539 U.S. at 521-22.  In the Petitioner's direct appeal, the Supreme Court of Georgia correctly stated and properly applied this standard.

The Petitioner contends that two later United States Supreme Court cases dictate a decision in his favor.  In <u>Williams v. Taylor</u>, the Court upheld a defendant's ineffectiveness of counsel claim, holding that the defendant's representation during his sentencing phase fell short of professional standards.  Specifically, the Court found

that trial counsel failed to introduce evidence of the defendant's subpar intelligence and education, failed to seek prison records reflecting commendation of the defendant, and failed to return phone calls of a positive character witness. Williams, 529 U.S. at 396.   Moreover, counsel "failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." Id. at 395.  For these reasons, the Supreme Court found that the sentencing counsel's investigation into the defendant's background was so lacking as to render the proceeding fundamentally unreliable.

In Wiggins v. Smith, the defendant's counsel at sentencing limited his investigation to three sources: (1) a psychologist's reports; (2) a pre-sentence investigation report including a one-page account of the defendant's "personal history"; and (3) Department of Social Services' records documenting the defendant's placements in the state's foster care system. Wiggins, 539 U.S. at 523-34.  The record of the sentencing evidenced that this "failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment." Id. at 526.  As a result, the Supreme Court held that the state court's deference to counsel's decision to limit the scope of its investigation was objectively unreasonable. Id.

In the state habeas corpus proceeding, the Petitioner introduced additional evidence that he claims should have been presented as mitigating evidence in the sentencing phase of his trial.  The Petitioner cites discoverable evidence suggesting that:

• Petitioner's father was a chronic gambler whose addiction sucked up rent and food money.

• Petitioner's family was repeatedly evicted, the children went hungry, and the family had to rely on friends and neighbors for help.

• Petitioner's mother suffered from chronic depression, psychoses, fugue states, and visual and auditory hallucinations.

• Petitioner's mother attempted suicide at home with the Petitioner, who watched his mother taken away in an ambulance and was not told until the following day that she was alive.

• Petitioner's father abused the Petitioner physically and emotionally.

• Petitioner lagged academically and was placed in remedial classes, in which he still performed poorly.

• Petitioner, as a child, was dosed with noxious home remedies.

The Petitioner also cites discoverable evidence suggesting that:

•    Petitioner has, since early childhood, seen visions and suffered auditory hallucinations, including that of "the devil inside his head."

•    Petitioner has had religious visions and has professed to believe himself to be a prophet of God.

•    Petitioner has had seizures during which he may suffer altered consciousness.

•    Petitioner has organic brain damage.

The state habeas judge considered this evidence, and held that the Petitioner would have had a better chance of escaping the death penalty if this mitigating evidence had been presented.  In reversing, the Supreme Court of Georgia reviewed the effectiveness of both trial and appellate counsel:

> We note, as an initial matter, this Court's own impression during the direct appeal that appellate counsel had "attack[ed] virtually every decision made by trial counsel."  Ferrell v. State, supra at 119(3), 401 S.E.2d 741.  Ferrell's appellate lawyer testified in the habeas proceeding that she obtained Ferrell's file from his trial attorneys, interviewed Ferrell, spoke to his family members, reviewed some of his school records, and subpoenaed various other records.  She also had an independent mental health expert interview Ferrell, review the findings of the mental health expert employed by trial counsel, and review Ferrell's post-conviction mental health records.  At the motion for new trial evidentiary hearing, appellate counsel attempted to show that Ferrell's trial attorneys had not prepared sufficiently for the sentencing phase.  Toward that end, appellate counsel presented a number of witnesses, including some of Ferrell's family members, the mother of his children, and his trial counsel.  Appellate counsel testified at the habeas hearing that Ferrell's family members were "traumatized" at the time of

the motion for new trial.  This testimony is confirmed by the testimony
of Ferrell's trial attorneys at the motion for new trial hearing indicating
that several of Ferrell's own family members believed that he had
murdered his grandmother and cousin.  Trial counsel further testified that
they had been in contact with Ferrell's parents from the beginning of
their representation, had obtained a list of 40 to 45 possible witnesses,
had used the services of an investigator to assist them in interviewing
these witnesses, had obtained school and prison records, had obtained a
review of Ferrell by a mental health expert regarding his possible mental
retardation and his susceptibility to coercion or confusion during police
questioning, and had consulted with several persons who were well
versed in death penalty trial strategies in formulating their "residual
doubt" strategy for the sentencing phase of Ferrell's trial. As this brief
overview indicates, Ferrell's appellate attorney attempted to show the
limits of trial counsel's preparation for the sentencing phase, but the
evidence actually available, most importantly the evidence of trial
counsel's strategic decisions and attempts to develop a theory
supportable by available testimony and evidence, was not particularly
favorable to Ferrell's claim that his trial attorneys rendered ineffective
assistance.

Head v. Ferrell, 274 Ga. at 404-05.  In response to the Petitioner's claim that trial

counsel presented character witnesses but no mitigating evidence, the court then

explicitly revisited the issue of trial counsel's effectiveness in the sentencing phase of

the trial.

Although character witnesses sometimes might not contribute
significantly to a sentencing phase defense, testimony from Ferrell's
closest family members about their perception of his character and his
inability to murder his grandmother and cousin fit well into trial
counsel's chosen sentencing phase strategy of showing "residual doubt."
Mitigating evidence is anything that might persuade a jury to impose a
sentence less than death, and Ferrell's trial attorneys, as this Court
implicitly found on direct appeal, acted with reasonable professional
judgment in focusing largely on the mitigation theory of "residual doubt"

and presenting testimony consistent with that theory.  To the extent that the habeas court held that character witnesses cannot offer mitigating testimony, it was in error.

<u>Id.</u> at 405.[3]  The court then set forth a lengthy comparison of the testimony at the motion for new trial and the new evidence introduced in the habeas proceeding.  The court then concluded:

> Much of this affidavit testimony suggests that the characterizations pertained to Ferrell as a young boy.  Even assuming that trial and appellate counsel could have obtained this testimony, it does not appear that the impact thereof would have been compelling either to the jury at trial or to this Court on direct appeal as part of an ineffective assistance of trial counsel claim, particularly because Ferrell was 24 years old when he committed the crimes.  In fact, it appears from the files of Ferrell's trial attorneys and from the motion for new trial hearing that one of the habeas proceeding affiants, Ferrell's fifth grade teacher, had refused to respond to questions posed to her by trial counsel's investigative assistant and that another, Ferrell's uncle, believed at the time of Ferrell's trial and direct appeal that he was guilty of the murders.  Furthermore, the motion for new trial testimony showed that Ferrell's defense team had contacted staff members at his high school, but that none of them had anything good to say about him.  These facts indicate that neither trial nor appellate counsel rendered ineffective assistance.

<u>Id.</u> at 406-07.  The court also addressed the new evidence of mental illness:

_____

[3]Counsel for the Respondent do not accurately describe the scope of the interviews or the interview notes of trial counsel's investigators.  It is clear that the investigators did not limit themselves to asking questions about the Petitioner's reputation for veracity.  (Resp't Ex. 42 at 496-532.)

Ferrell submitted to the habeas court the affidavit testimony of three mental health professionals suggesting that Ferrell suffers from organic brain damage, mental illness, an epileptic or seizure disorder, and mental retardation. However, this testimony, even if taken at face value, fails to demonstrate that Ferrell's appellate lawyer rendered ineffective assistance, because she performed as a reasonable attorney would have by obtaining a mental health expert to meet with Ferrell, to review the findings of the mental health expert employed by trial counsel, and to examine the mental health records created during Ferrell's incarceration. The expert employed by counsel on appeal found Ferrell to be competent, sane, and faking amnesia, and informed her that he could not be helpful. Testimony by trial counsel at the motion for new trial hearing showed that they saw no indications in interacting with Ferrell that suggested mental illness. Appellate counsel, like Ferrell's trial attorneys, performed reasonably by obtaining expert assistance in investigating the few issues regarding Ferrell's mental functioning that would have seemed of possible concern to a non-expert and then foregoing arguments not supportable by the opinions of those experts.

Id. at 407.

The question before this Court is whether the Supreme Court of Georgia reasonably applied the standard clearly established in Strickland and outlined in Williams and Wiggins to the facts presented in the state court proceedings. In arguing that the Supreme Court of Georgia's application of Strickland was unreasonable, the Petitioner alleges that trial and appellate counsel rendered ineffective assistance by performing a deficient investigation and presentation of mitigation evidence, and a deficient investigation of the Petitioner's mental health. Rather than outline what appellate counsel did with the limited resources available to them, the Petitioner stresses what trial and appellate counsel failed to discover. The evidence cited by the

Petitioner deals almost exclusively with his disadvantaged upbringing and indicia of mental illness--areas that, in <u>Williams</u> and <u>Wiggins</u>, were deemed potentially problematical in sentencing proceedings.

In reviewing the appeal of the Petitioner's state habeas proceedings, the Supreme Court of Georgia reviewed the trial record, the motion for new trial record, and the habeas record. <u>Head v. Ferrell</u>, 274 Ga. at 405. As an initial matter, the court noted the difficulty of the task facing the Petitioner's appellate counsel. <u>Id.</u> at 405 ("[T]he evidence actually available, most importantly the evidence of trial counsel's strategic decisions and attempts to develop a theory supportable by available testimony and evidence, was not particularly favorable to Ferrell's claim that his trial attorneys rendered ineffective assistance."). Following initial investigation into the Petitioner's case and consultation with persons versed in death penalty strategies, trial counsel decided to employ a "residual doubt" strategy for the sentencing phase of the Petitioner's trial.

The decision to rely upon residual doubt is a perfectly acceptable strategy at sentencing, particularly where the defendant denies guilt. "Creating lingering doubt over a defendant's guilt is not only a reasonable strategy, but 'is perhaps the most effective strategy to employ at sentencing.'" <u>Parker v. Sec'y for the Dep't of Corr.</u>, 331 F.3d 764, 787-88 (11th Cir. 2003) (quoting <u>Chandler v. United States</u>, 218 F.3d

1305, 1320 (11th Cir. 2000) (en banc)); <u>see also</u> <u>Tarver v. Hopper</u>, 169 F.3d 710, 715-

16 (11th Cir. 1999) (citing a study of juror opinions concluding that raising residual

doubt over a defendant's guilt is "the best thing a capital defendant can do to improve

his chances of receiving a life sentence"). Residual doubt can be particularly effective

at sentencing where a defendant has insisted upon his innocence at trial. In such a

situation, the time and effort expended by an attorney in preparing the guilt phase of

a capital case may continue to aid with the sentencing phase. <u>See</u> <u>Parker</u>, 331 F.3d at

787 (citing <u>Tarver</u>, 169 F.3d at 715). Consequently, an attorney's decision to focus

on the guilt-innocence stage of trial and then to rely on the same arguments to create

residual doubt at sentencing can be a judicious and effective use of resources.

When an attorney adopts a residual doubt strategy, it often makes sense for the

attorney not to present other potentially mitigating evidence that runs contrary to the

strategy. A strategy of residual doubt relies upon the possibility that the defendant did

not commit the crime of which he was found guilty. Many forms of mitigating

evidence at sentencing do not exculpate the defendant, but rather attempt to explain

why the defendant may have committed the crime. Evidence of a defendant's

disadvantaged upbringing surrounded by violence may aid in explaining why he may

have used violence to resolve a situation. At the same time, such evidence may erode

any residual doubt, reinforcing the likelihood that the defendant would have

committed the crime.  Evidence of a defendant's diminished mental capacity or mental illness may lead a jury to conclude that the defendant's actions were due as much to derangement as to malice.  At the same time, evidence of mental infirmity could also belie lingering doubt, undercutting the accuracy and veracity of the defendant's testimony.  Such evidence is particularly problematical in a case such as this where the mental health evaluations contain a long history of alcohol and drug abuse-- marijuana, cocaine, LSD, amphetamine, Valium, phenobarbital, and Quaaludes. (Resp't Ex. 41 at 38.)  This history, if introduced at trial, was likely to add fuel to the fire of the prosecutor's argument that the Petitioner was the sort of crazed animal that could shoot his own grandmother twice in the head and then go out and drink a six-pack of beer.

Because mitigating evidence attempts to explain why the defendant committed the crime, it necessarily reinforces the notion that the defendant did indeed commit the crime.  For this reason, the Court of Appeals for the Eleventh Circuit has made it clear that sentencing counsel need not present all the mitigating evidence available to him. Chandler, 218 F.3d at 1319 (recognizing that because "[s]tacking defenses can hurt a case," there is "[n]o absolute duty . . . to introduce mitigating or character evidence") (citing Burger v. Kemp, 483 U.S. 776, 794-95 (1987)).  Rather, "[c]ounsel who fail to present any mitigating evidence, even when it is available at sentencing, may still

be deemed constitutionally effective, provided that the decision not to present mitigating evidence was a tactical one based on the results of a reasonable investigation." Hubbard v. Haley, 317 F.3d 1245, 1260 (11th Cir. 2003) (citing Burger, 483 U.S. at 794-96; Strickland, 466 U.S. at 690-91). If sentencing counsel's decision to forego presentation of mitigating evidence in favor of a strategy of lingering doubt was the product of a reasonable investigation, it will not constitute ineffective assistance of counsel. Callahan v. Campbell, --- F.3d ---, 2005 WL 2446088, *34 (11th Cir. 2005) ("Given the hand Knight was dealt, we cannot say a decision to focus on mercy instead of mitigation was an unreasonable one.")

The Supreme Court of Georgia found that sentencing counsel's decision to pursue a strategy of residual doubt was reasonable. Head v. Ferrell, 274 Ga. at 405. The court cited trial counsel's contact with the Petitioner's family, use of an investigator to interview a list of witnesses provided by the Petitioner, review of school and prison records, and evaluation of the Petitioner by a mental health expert as evidence that trial counsel had based its trial and sentencing strategy on significant investigation of the Petitioner's case. Id. It noted trial counsel's consultation of several persons with experience in death penalty cases as additional support for the reasoning behind the residual doubt strategy. Id.

Appellate counsel attempted, in the Petitioner's motion for new trial, to show that trial counsel's preparation for the sentencing phase of the Petitioner's trial was insufficient. Head v. Ferrell, 274 Ga. at 405. This is the same argument made by the Petitioner before the state habeas courts. In the state habeas case, the Supreme Court of Georgia compared the evidence and argument presented at the habeas proceeding with that presented by counsel in the Petitioner's direct appeal. Id. at 405-06. The court found that much of the mitigating evidence proffered in the habeas proceeding was also referenced in the Petitioner's direct appeal. Id. at 406-07. The habeas court was provided with affidavits from a number of the Petitioner's friends and family suggesting that his father had a gambling problem and was responsible for the family's poverty and attendant problems. Id. at 406. At the motion for new trial stage, the Petitioner's brother offered similar testimony. Id.; (Resp't Ex. 17 at 97-98.) The habeas court heard about a fire that burned down the family home when the Petitioner was five years old. Head v. Ferrell, 274 Ga. at 406. The Petitioner's brother described the fire and his and the Petitioner's transient childhood in the hearing on the motion for new trial. Id.; (Resp't Ex. 17 at 100-04.) The mitigating evidence presented at the habeas proceedings and not at the motion for new trial consisted largely of affidavit testimony about the Petitioner's childhood--reference to the stern and capricious discipline he received from his father and characterizations

of the Petitioner as a well-mannered youth.  This evidence, the Supreme Court of Georgia held, would not have been compelling to the court on direct appeal, particularly because the Petitioner was a 24-year old adult at the time of the crimes. Head v. Ferrell, 274 Ga. at 407; see also Gilreath v. Head, 234 F.3d 547, 551 n.10 (11th Cir. 2000) ("Petitioner clearly was not prejudiced by trial counsel's failure to present this kind of evidence.  Petitioner was more than forty years old at the time of the murders, and 'evidence of an abusive childhood would have been entitled to little, if any, mitigating weight.'") (quoting Marek v. Singletary, 62 F.3d 1295, 1300-01 (11th Cir. 1995)).

The Supreme Court of Georgia also evaluated appellate counsel's investigation into and presentation of evidence concerning the Petitioner's mental health.  Appellate counsel obtained funds for a mental health expert to meet with the Petitioner.  The expert reviewed the findings of the mental health professional employed by trial counsel and records of the Petitioner's "suicide watch" status while in prison.  He informed appellate counsel that he found the Petitioner to be competent, sane, and faking amnesia, and concluded that he could not be helpful in pursuing the Petitioner's appeal.  Based on these findings, the Supreme Court concluded that appellate counsel "performed reasonably by obtaining expert assistance in investigating the few issues regarding Ferrell's mental functioning that would have seemed of possible concern

to a non-expert and then foregoing arguments not supportable by the opinions of those experts." Head v. Ferrell, 274 Ga. at 407.    In the state habeas proceeding, the Petitioner submitted affidavits from three mental health experts suggesting that the Petitioner suffers from organic brain damage, mental illness, a seizure disorder, and mental retardation.  Appellate counsel's investigation into the Petitioner's mental health was largely limited to evaluations of competence and sanity.  Citing the Eleventh Circuit's decision in Brownlee v. Haley, 306 F.3d 1043 (11th Cir. 2002), the Petitioner contends that because appellate counsel failed to recognize and investigate the Petitioner's mitigating mental conditions, she provided ineffective assistance of counsel.  This case is easily distinguished from Brownlee where the district court "expressly rejected the argument that the decision to present no mitigating evidence was strategic, noting that [trial counsel] 'did not . . . pursue a penalty phase strategy emphasizing residual doubt.'" Brownlee, 306 F.3d at 1069.  Here, sentencing counsel clearly advanced, albeit at times inartfully so, a theory of residual doubt in the sentencing proceedings.

Attorneys "do not enjoy the benefit of endless time, energy, or financial resources." Williams v. Head, 185 F.3d 1223, 1237 (11th Cir. 1999) (quoting Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994)).  The Supreme Court of Georgia recognized that, during the Petitioner's direct appeal, appellate counsel had "attack[ed] virtually

every decision made by trial counsel." <u>Head v. Ferrell</u>, 274 Ga. at 404 (quoting <u>Ferrell v. State</u>, 261 Ga. at 119). Counsel's decision to limit investigation into a given area--here, the Petitioner's mental conditions--must be afforded a heavy measure of deference. <u>Strickland</u>, 466 U.S. at 691. Here, the Supreme Court of Georgia has afforded deference both to sentencing counsel's reasoned decision to pursue a theory of residual doubt and appellate counsel's decision to employ her limited resources in ways other than to attack sentencing counsel's strategic decision.

After independently reviewing the trial record, the appellate record, and the habeas record, this Court cannot hold that the Supreme Court of Georgia's denial of habeas relief for ineffective assistance of trial or appellate counsel was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Trial counsel and appellate counsel performed reasonable and adequate investigations into the availability of mitigating evidence. Trial counsel's strategic decision to rely upon residual doubt and a plea for mercy was a reasonable one. Consequently, pursuant to <u>Strickland</u> and its progeny, this Court denies relief as to the Petitioner's first habeas claim.

The Supreme Court of Georgia did not directly address the prejudice prong of the <u>Strickland</u> test.  Therefore, this Court is left with the findings of fact and conclusions of law of the habeas trial court.  It is clear that the trial court applied the wrong standard to determine prejudice.  In granting the writ, the habeas court stated: "However, had this mitigating evidence been submitted to the jury, at least Petitioner would have stood a more reasonable opportunity to obtain the jury's consideration and mercy." (Resp't Ex. 59 at 10.)  That is not the test.  In order to meet the prejudice prong of the <u>Strickland</u> test, the defendant must show there is a reasonable probability that the outcome of the proceeding would have been different.  See <u>Strickland</u>, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. When a defendant challenges a death sentence, the court must evaluate the totality of the available mitigation evidence--both that adduced at trial, and the evidence adduced in the habeas proceeding--and reweigh it against the evidence in aggravation. <u>Callahan v. Campbell</u>, --- F.3d ---, 2005 WL 2446088, *35 (11th Cir. 2005).

Much of the newly discovered mitigating evidence is contradictory.  Much of it--such as the long history of drug abuse--could weigh in favor of the death penalty. Taken as a whole, the new mitigating evidence weighed against the aggravating

evidence does not persuade this Court that the Petitioner has shown a reasonable probability that the outcome of the proceeding would have been different. The evidence was overwhelming that the Petitioner put a gun to the head of his sleeping cousin and murdered him. He then shot his own grandmother twice in the head. His motive was to steal his grandmother's money. This was cold-blooded murder, not a crime of impulse or passion. These horrific facts outweigh any evidence of childhood hardships. Claim I of the petition is without merit.

      B.      <u>Claim II – Closing Argument</u>

The Petitioner contends that he was denied the effective assistance of counsel as a result of his trial counsel's allegedly dehumanizing and denigrating closing argument. The Respondent alleges that the Petitioner raises this claim for the first time in this federal habeas corpus petition. Before bringing a federal habeas petition, a state prisoner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b), (c); <u>Nelson v. Schofield</u>, 371 F.3d 768, 769-70 (11th Cir. 2004). Inclusion of an unexhausted claim does not require dismissal of the petition, but rather may persuade the court to deem such claim procedurally defaulted. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996); <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989) (a "federal habeas corpus court need not require that a federal claim be

presented to a state court if it is clear that the state court would hold the claim procedurally barred"). Pursuant to Georgia's successive petition rule, O.C.G.A. § 9-14-51, an unexhausted claim is procedurally barred if it was reasonably available for presentation at the time of a petitioner's first state habeas corpus proceeding. Thus, if at his state proceedings, the Petitioner failed to raise the claim that he was denied effective assistance of counsel based on trial counsel's closing argument, the claim would be procedurally defaulted.

The Respondent fails to demonstrate that the Petitioner's claim is unexhausted, and that it should be procedurally defaulted. The Petitioner first argued that his trial counsel's closing argument at sentencing was ineffective in his direct appeal to the Supreme Court of Georgia. (Resp't Ex. 19 at 26-29.) His brief before the Supreme Court raised the issue of closing argument at the penalty phase of trial, citing specific statements by trial counsel that served to dehumanize and denigrate the Petitioner and arguing that the argument prejudiced his sentencing. Id. The Petitioner also raised this argument, albeit in conjunction with other ineffective assistance of counsel claims, in his brief supporting his amended petition for habeas corpus at the state level. (Resp't Ex. 54 at 2, 141.) The state habeas brief states that trial counsel "made a closing argument to the jury which was actively hostile, denigrated Mr. Ferrell, and called his innocence testimony ludicrous and unbelievable." (Id. at 2.) The brief also

outlines the legal ramifications of a counterproductive closing argument, noting that "[i]n combination with the indefensible closing argument, the[] errors dictate the conclusion that counsel's performance was constitutionally deficient." (Id. at 141 (quoting Wade v. Calderon, 29 F.3d 1312, 1325 (9th Cir. 1994), and citing Strickland, 466 U.S. at 687).)  The Petitioner's claim of deficiency in trial counsel's closing argument was not addressed by the Supreme Court of Georgia in its order affirming the conviction and sentence.  Nor was it addressed in the state habeas order.  But it was preserved and may be considered on the merits by this Court.

As to this claim, the Petitioner has not satisfied either prong of the Strickland test.  Trial counsel's closing argument in the sentencing phase is not likely to become a model in law school trial practice courses.  In an effort to gain credibility with the jury, he probably overstated the case against the Petitioner.  But the state had a very strong case.  Admitting this is not ineffective assistance of counsel.  It did not inject any new prejudicial matter into the sentencing phase of the trial.  The Petitioner told an absurd and utterly unbelievable story about how he ended up with the murder weapon, the spent shell casing and several hundred dollars belonging to the victim.  Counsel argued residual doubt and pleaded for mercy.  As long as the Petitioner continued to deny his guilt, there was not much more he could do.  This was not a close case where a more effective closing argument could have changed the outcome.

If counsel's performance was deficient, the Petitioner has not shown a reasonable probability that the outcome of the proceeding would have been different.

    C.    <u>Claim III – Conflict of Interest</u>

The Petitioner argues that a conflict of interest prevented his trial counsel from providing adequate legal assistance as required by the Sixth Amendment. Specifically, the Petitioner alleges that his trial counsel labored under a conflict of interest because the public defenders' office simultaneously represented his uncles in another murder case.  In pretrial proceedings, the Petitioner objected to the conflict, but his attorneys represented to the trial court that they did not perceive any conflict to exist unless the state intended to call the uncles as witnesses.[4]  The trial court

---

[4]In the First Proceeding held April 8, 1988, the Petitioner initially noted his objection to the DeKalb County Public Defenders' Office conducting his defense. The exchange between the Petitioner and the court follows:

The Court:    All right, sir, at this time now, Mr. Ferrell, I'm going to give you the opportunity, if you wish, to raise any objections you wish to either defense counsel or to the manner he's conducting defense at this time. Do you have any objections at this time to the way Mr. Schneider's conducting defense?

Mr. Ferrell:    [M]y objection is that I prefer . . . as far as . . . to my knowledge, my uncles, they are . . . character witnesses . . . as far as my case goes.  And by them being represented by the same office, I feel that something may happen, may -- they may not say the things I'm expecting them to say in my case.
    And I feel that it . . . that . . . it will cause a problem there. -- as far as my case goes, by us being represented by the same office.

_____

The Court:      Are they to be character witnesses for you?

Mr. Ferrell:    As far as my knowledge, according to Mr. -- what Mr. Siemon had told me.

The Court:      Well, in any event, I'll take . . . I'll take note of what you've told us, and I'll ask that Mr. Schneider talk to Mr. Siemon, and see if that presents any kind of particular problem.
                Do you have any other, further, objection to the representation of Mr. Schneider at this time?  --or the Public Defender's Office?

[Pause.]

Mr. Ferrell:    Well . . . just, other than that, I just want to be represented . . . right.

The Court:      I believe . . . For whatever it's worth . . . it's my opinion--

Mr. Ferrell:    I just feel that . . .

The Court:      -- I . . . .

Mr. Ferrell:    I just feel that, too . . . by -- you know, by both of us being represented by the same office and these public defenders, my case, as far as it goes, there's a terrible mistake being made . . . and just -- I feel that this should be investigated to the fullest.

The Court:      All right, sir.  I have . . . instructed Mr. Schneider to look into it and make the investigation.
                And he will talk it over with your former attorney, and he will make his own investigation and will report back to the Court if indeed there is there is a problem . . . a legal problem in this case.

Mr. Ferrell:    Yes, sir.

The Court:      Thank you, sir.

-31-

called on the attorneys to investigate the conflict.  After the state agreed not to call the

uncles, the attorneys continued to represent the Petitioner throughout the trial.  On

direct appeal, the Supreme Court of Georgia dismissed the Petitioner's claim and held

that there was no *actual* conflict of interest.  The court stated:

> There was no relationship between the two separate cases of murder, and
> the defendant's uncles did not testify at, and had no information relevant
> to, this trial. There was no actual conflict of interest adversely affecting
> trial counsel's performance in this case.  The trial court did not err in its
> handling of the defendant's objection to representation by public
> defenders.

Ferrell v. State, 261 Ga. at 120 (citations omitted).  After the Petitioner raised the issue

in his state habeas proceedings, the habeas court concluded that the Petitioner's

appellate counsel rendered ineffective assistance in her handling of the argument that

trial counsel faced a conflict of interest.  This conclusion was based upon an erroneous

factual finding that the uncles did not testify because of plea bargains with the state.

Upon appeal to the Supreme Court of Georgia, the court again found no *actual*

conflict of interest and held that "nothing presented in Ferrell's habeas proceeding

would have in reasonable probability changed that conclusion."  Head v. Ferrell, 274

Ga. 399, 408 (2001).

———————————————

(First Proceeding 6-8).

-32-

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland, 466 U.S. at 686; Hamilton v. Ford, 969 F.2d 1006, 1011 (11th Cir. 1992), cert. denied, 507 U.S. 1000 (1993). A lawyer who represents multiple defendants with conflicting interests cannot provide sufficient legal assistance to satisfy the Sixth Amendment right to counsel. Holloway v. Arkansas, 435 U.S. 475, 481 (1978). "[W]hen counsel is burdened with a conflict of interest, she 'breaches the duty of loyalty, perhaps the most basic of counsel's duties' and has therefore failed to provide effective assistance of counsel." Hamilton, 969 F.2d at 1011 (quoting Strickland, 466 U.S. at 492).

In Holloway v. Arkansas, the United States Supreme Court held that a criminal defendant who objects to his representation based on a conflict of interest prior to trial need not demonstrate the existence of *actual* conflict. Holloway, 435 U.S. at 490-91. The Court recognized that when counsel represents conflicting interests, actual conflict can be extraordinarily difficult to demonstrate, as "the evil . . . is in what the advocate finds himself compelled to *refrain* from doing, not only at trial, but also as to possible pretrial plea negotiations and in the sentencing process." Id. at 490 (emphasis in original). Pursuant to Holloway, the Eleventh Circuit has held that "in the situation where there is both a timely objection *and* the trial court fails to appoint separate counsel *or* to inquire adequately into the possibility of a conflict of interest,

the reversal will be automatic." Hamilton, 969 F.2d at 1012 (emphasis in original);

see also United States v. Sutton, 794 F.2d 1415, 1419 (9th Cir. 1986); United States

v. Cirrincione, 780 F.2d 620, 625 (7th Cir. 1985); United States v. Punch, 722 F.2d

146, 152 (5th Cir. 1983).  As the trial court did not appoint new counsel for the

Petitioner, this Court is faced with two distinct questions: (1) did the Petitioner offer

timely objection, and (2) did the court inquire sufficiently into the possibility of a

conflict of interest.

The Petitioner clearly raised a timely objection to his representation by counsel

with an alleged conflict of interest.  As noted above, the trial court prompted the

Petitioner to raise any pertinent pretrial objections in the First Proceeding.  (First

Proceeding 6-8).  He responded by clearly and unequivocally expressing objection to

being represented by lawyers from the same office that was simultaneously

representing his uncles in another murder case.  Id.  Indeed, the trial court recognized

his objection and ordered his attorneys to investigate the nature and scope of the

potential conflict.  Id.  The question that remains for this Court is whether the trial

court's order constituted sufficient inquiry into the possibility of conflict to satisfy the

standard suggested by Holloway and outlined in Hamilton.

Habeas courts generally defer to the judgment of defense counsel regarding the

existence or absence of a disabling conflict.  Mickens v. Taylor, 535 U.S. 162, 167-68

(2002); Holloway, 435 U.S. at 485.  The primary reason for according such deference to counsel is that "an attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." Holloway, 435 U.S. at 485. Moreover, as an officer of the court, defense counsel has an obligation to promptly and honestly advise the court of a discovered conflict of interest. Id. at 486.  In most cases, defense counsel requests severance or appointment of separate counsel, and this request is presumptively valid.  In this case, however, the Petitioner made the request for investigation of a conflict and, potentially, appointment of separate counsel. Defense counsel came to the reasoned conclusion that no disabling conflict existed and, consequently, that no separate representation was required.  Although this situation differs from that in the controlling cases, the principle that defense counsel's decision should be afforded deference remains salient.  The reasons underlying this principle still apply; defense counsel was in a position to evaluate the conflict and was under a duty to the court to do so impartially.

In this case, defense counsel concluded that there was no conflict if the prosecution did not intend to call the Petitioner's uncles to testify.[5]  This is consistent

---

[5]Defense counsel noted in a July 29 pre-trial hearing, "In the event that the State should determine that they would need to call these two gentlemen [the Petitioner's uncles] as witnesses at this trial, our office would then have a conflict of interest.  We

with other cases.  See, e.g., United States v. McCullah, 76 F.3d 1087, 1099 (10th Cir. 1996) (finding adequate inquiry where potential witness causing potential conflict was disqualified from testifying).  In addition, other courts have held that a potential conflict is not created by the representation of defendants by attorneys in the same office.  See, e.g., United States v. Trevino, 992 F.2d 64, 66 (5th Cir. 1993) ("The potential for such conflicts, however, does not necessarily exist when . . . codefendants are represented by different attorneys, albeit in the same public defender office.").  In this case, the trial court, after requesting that defense counsel investigate the conflict and according deference to the defense counsel's appraisal of the potential conflict, concluded that no conflict barred defense counsel from representing the Petitioner.  As counseled by Holloway and the Tenth Circuit's holding in McCullah, the trial court's inquiry into the conflict and its reliance on defense counsel's representations were sufficient to meet the requirements of the Sixth Amendment.

In Cuyler v. Sullivan, 446 U.S. 335 (1980), the Supreme Court of the United States held that to establish an ineffective assistance of counsel claim stemming from a conflict of interest where there was no objection at trial, a defendant "must

---

would be in a position of cross-examining our clients."  (Resp't Ex. 7 at 16-17.) Actually, defense counsel did not want the state to call either of them because they would testify that they thought the Petitioner killed their mother.  Getting the state to agree not to call them was a strategic victory for the defense.

demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348. Two steps were incumbent in this analysis: (1) determining whether an actual conflict existed, and (2) determining whether the conflict had an adverse effect on representation. Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996). Pursuant to Cuyler, a conflict must be actual, not merely speculative; the mere possibility of conflict of interest does not constitute a Sixth Amendment violation. Id.; McConico v. Alabama, 919 F.2d 1543, 1546 (11th Cir. 1990); Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987), cert. denied, 484 U.S. 863 (1987).

The Petitioner contends that, even if the inquiry into the potential conflict was sufficient to satisfy the standard outlined in Holloway, an actual conflict of interest rendered his trial counsel's assistance ineffective pursuant to Cuyler. The Eleventh Circuit has adopted the following test to determine whether actual conflict can be found:

> We will not find an actual conflict unless [the defendant] can point to specific instances in the record to suggest an actual conflict or impairment of [her interest]. The defendant must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence that favors an interest in competition with that of the defendant. If [the attorney] did not make such a choice, the conflict remained hypothetical.

Buenoano, 74 F.3d at 1086 n.6 (quoting Smith v. White, 815 F.2d 1401, 1404 (11th

Cir. 1987), cert. denied, 484 U.S. 863 (1987)) (internal citations and quotation marks

omitted).  I conclude, as did the Supreme Court of Georgia both on direct appeal and

on appeal of the Petitioner's state habeas claim, that the Petitioner has failed to show

an actual conflict or any adverse effect that such a conflict actually had on trial

counsel's performance.[6]  As the Supreme Court of Georgia's holding was neither

contrary to established federal law, nor an unreasonable determination of the facts in

light of the evidence available to the state court, the Petitioner's claim for relief is

properly denied.

      D.     Claim IV – Mental Retardation

The Petitioner contends that he is mentally retarded and is, therefore, pursuant

to Atkins v. Virginia, 536 U.S. 304 (2002), and the Eighth Amendment, ineligible for

the death penalty.  He challenges the Georgia statute governing determinations of

mental retardation, both generally and as applied by the state habeas courts.  The

statute, O.C.G.A. § 17-7-131, outlines the requirements governing findings of mental

---

[6]The habeas corpus trial court's finding that the uncles did not testify because
of negotiated deals with the state is clearly erroneous.  Indeed, the Supreme Court of
Georgia cited the later testimony of the Petitioner's uncles that they refused to testify
not because of any pre-existing agreement with the state, but rather because they
adamantly believed that the Petitioner had murdered their mother.  Head v. Ferrell,
274 Ga. at 408-09.

retardation in Georgia state courts.  A defendant may be found "guilty but mentally retarded"--and thereby ineligible for the death penalty pursuant to O.C.G.A. § 17-7-131(j)--if the court "finds beyond a reasonable doubt that the defendant is guilty of the crime charged and is mentally retarded."  O.C.G.A. § 17-7-131(c).  The Petitioner contends that the United States Supreme Court's decision in Atkins, requires this Court to hold the Georgia statute unconstitutional, as the Georgia procedure requires the criminal defendant to bear the burden of proving that he is mentally retarded.  In Atkins, the Supreme Court established a federal constitutional prohibition on the execution of the mentally retarded.  Atkins, 536 U.S. at 321.  The Court, however, specifically stated that it would "leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon the execution of its sentences."  Id. at 317 (quoting Ford v. Wainwright, 477 U.S. 399, 416-17 (1986)).  Included in this mandate is the procedure for determination of a defendant's mental retardation.  Id. at 317; see also Morrison v. State, 276 Ga. 829, 834-35 (2003).  The Petitioner correctly notes that the burden on a criminal defendant to prove mental retardation is more onerous in Georgia than in many other states.[7]  However, the Court

---

[7]Of the eighteen states that banned execution of the mentally retarded before Atkins, nine required the criminal defendant to prove mental retardation by a preponderance of the evidence.  See Ark. Code Ann. § 5-4-618; Conn. Gen. Stat. § 53a-46a; Md. Code Ann., art. 27 § 412; Mo. Rev. Stat. § 565.030; Neb. Rev. Stat. Ann. § 28-105.01; N.M. Stat. Ann. § 31-20A-2.1; N.Y. Crim. Proc. Law § 400.27;

in <u>Atkins</u> makes it abundantly clear that each state is permitted to design its own system for determining mental retardation, insofar as such system does not wholly erode the constitutional prohibition against execution of the mentally retarded.  The Petitioner fails to persuade this Court that Georgia's statute so erodes this prohibition.

Pursuant to O.C.G.A. § 17-7-131(a)(3) (and consistent with <u>Atkins</u>), Georgia defines the "mentally retarded" as persons "having significantly subaverage general intellectual functioning resulting in or associated with impairments in adaptive behavior which manifested during the developmental period."  The state habeas court rejected the Petitioner's <u>Atkins</u> claim, noting that the Petitioner provided no concrete evidence to demonstrate that he fell within the scope of the definition of mental retardation.  (Resp't Ex. 59 at 18.)  The Supreme Court of Georgia also rejected the claim, citing numerous tests and records indicating that the Petitioner's mental function, while below average, did not render him mentally retarded.  <u>Head v. Ferrell</u>,

_____

Tenn. Code Ann. § 39-13-203; Wash. Rev. Code Ann. § 10.95.030.  Five states required clear and convincing proof.  <u>See</u> Ariz. Rev. Stat. § 13-703.02; Colo. Rev. Stat. § 16-9-402(2); Fla. Stat. Ann. § 921.137; Ind. Code Ann. § 35-36-9-4; N.C. Gen. Stat. § 15A-2005.  In the other three states and in cases before the federal government, the requisite burden upon the criminal defendant is unclear.  <u>See</u> 18 U.S.C. § 3596(c); Kan. Crim. Code Ann. § 21-4623; Ky. Rev. Stat. Ann. §§ 532.140, 542.130, 532.135; S.D. Codified Laws § 23A-27A-26.1.  The Georgia provisions barring execution of the mentally retarded, the first of their kind, are expressly mentioned and discussed by the Court in <u>Atkins</u>.  <u>Atkins</u>, 536 U.S. at 313-14.  The Court's discussion of the Georgia statute without criticism of the burdens it imposes upon the parties also suggests tacit approval of the state's procedure.

274 Ga. at 411-13. The Supreme Court of Georgia held that "[i]n light of the weak nature of Ferrell's habeas evidence and the credible conflicting evidence suggesting that he does not satisfy the Georgia statutory definition of 'mentally retarded,' . . . the habeas court did not err by finding that Ferrell had failed to prove beyond a reasonable doubt that he was mentally retarded." Id. at 413. The Petitioner has failed to offer any evidence that the state habeas court and the Supreme Court of Georgia's conclusions were based on an unreasonable determination of the facts in light of the evidence presented in those proceedings. Thus, the Petitioner's Atkins claim fails.

      E.      Claim V – Ineffectiveness of Appellate Counsel

The Petitioner alleges that he was denied the effective assistance of counsel as a result of his appellate counsel's failure to investigate and present evidence proving trial counsel's ineffectiveness at the guilt-innocence phase of his trial. He identifies thirteen distinct errors made by trial counsel during the guilt-innocence phase of his trial, and he contends that appellate counsel failed to properly present these errors at the motion for new trial or on direct appeal. The Supreme Court of Georgia addressed and rejected each of the Petitioner's claims of ineffectiveness. The Petitioner now contends that the Supreme Court of Georgia did not reasonably apply the Strickland standard in rejecting his claims. I will address the Petitioner's specific allegations of

ineffective assistance of counsel and the Supreme Court of Georgia's rulings
thereupon in turn.

1.      The Decision to Have the Petitioner Testify.  The Petitioner alleges that
appellate counsel was ineffective for not establishing that trial counsel's decision to
have the Petitioner testify was unreasonable.  The Supreme Court of Georgia rejected
this claim as follows:

> Appellate counsel argued on direct appeal that Ferrell's trial attorneys
> rendered ineffective assistance with regard to his decision to testify at a
> pre-trial hearing and at trial, with regard to preparing him once the
> decision to testify had been made, and in the manner in which they
> actually questioned him on the witness stand.  This Court rejected the
> claims of counsel on appeal, undoubtedly because this Court found
> credible and reasonable trial counsel's testimony at the motion for new
> trial hearing that their decision to advise Ferrell to testify was strategic.
> We conclude that appellate counsel did not render ineffective assistance
> with regard to this claim.

Head v. Ferrell, 274 Ga. at 409.  Trial counsel's testimony at the motion for new trial
supports the court's finding, as counsel weighed the benefits and detriments of having
the Petitioner testify and made the reasoned decision to advise him to do so.[8]  The

---

[8]Trial counsel testified that they decided Petitioner should take the stand
because:

> The statement that he gave to Detective Dillon was gonna come into evidence
> anyway.  And therefore . . . I didn't see that it was gonna do any harm at all for
> him to testify since the statement was gonna come in as what he told Detective
> Dillon . . . and of course we were hoping that . . . that, through his testimony,
> that he could persuade the jury that what he was sayin' was . . . was in fact true;

Supreme Court of Georgia's finding that having the Petitioner testify was a strategic decision is not an unreasonable determination of the facts.  Strategic decisions made by counsel after thorough investigation into facts and law relevant to available options are virtually unchallengeable.   Wiggins, 539 U.S. at 521-22 (quoting Strickland, 466 U.S. at 690-91).  Each of the alternatives available to trial counsel was bad.  Here, the Petitioner's testimony was the only way to present evidence of a revenge theory killing and to attempt to explain the Petitioner's contradictory statements to the police.  The Supreme Court of Georgia's holding that trial counsel's strategic decision did not amount to ineffective assistance was a reasonable application of Strickland.  Equally reasonable, then, was the court's determination that the failure of the Petitioner's appeal rested not with the ineffective assistance of appellate counsel but rather with the futility of a challenge to trial counsel's decision.  Even if appellate counsel's performance were deficient, the court reasonably

_____

and if he hadn't testified . . . despite the fact that the Court would have instructed the jury that they were not to . . . place any inference on the fact or hold it against him that he hadn't, I don't think, as a defense lawyer, you can ever assume that the jury's gonna do that and that . . . I was afraid that, in the back of their minds, they would be wondering, Well why didn't Mr. Ferrell get up and tell his side. . . . so it was my determination that he was certainly much better off telling his side to the jury.

(Resp't Ex. 17 at 168.)

concluded that the Petitioner was not prejudiced thereby and that the Petitioner's claim fails under Strickland.

2.      Failure to Present Corroborating Testimony.  The Petitioner alleges that statements from Ruby Ferrell, the Petitioner's mother, and Hubert Bailey, the Petitioner's uncle, suggest that they may have been able to provide testimony corroborating minor aspects of the Petitioner's story.  Consequently, he contends that appellate counsel was deficient for not showing that trial counsel's failure to present this evidence to corroborate the Petitioner's trial testimony constituted ineffective assistance.  The Supreme Court of Georgia rejected this claim, concluding that "presentation on direct appeal of the same testimony and argument on this issue that Ferrell has presented in the habeas proceeding would not in reasonable probability have changed the result on direct appeal."  Head v. Ferrell, 274 Ga. at 409.  Indeed, there was much evidence presented in the habeas proceeding that contradicted the statements made by Ms. Ferrell and Mr. Bailey.  (See, e.g., Resp't Ex. 43 at 566, 612, 628.)  Notably, even Ms. Ferrell stated immediately following the murders that she was not aware of any threats to her mother.  (Id. at 612.)  In light of the contradictory evidence presented, it is entirely reasonable that the Supreme Court of Georgia would conclude that the presentation of additional statements from Ms. Ferrell and Mr. Bailey on direct appeal would not have materially affected its determination of trial

counsel's effectiveness.  As a result, this Court cannot say that the Supreme Court of Georgia unreasonably applied Strickland to this claim of ineffective assistance by appellate counsel.[9]

The Supreme Court of Georgia also concluded, "in light of the weakness of this claim, that appellate counsel did not render deficient performance by focusing on other claims to the exclusion of this one." Head v. Ferrell, 274 Ga. at 409.  Appellate counsel is not obligated to raise every non-frivolous issue.  See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) (emphasizing importance of winnowing appellate argument to a few key issues).  The Supreme Court of Georgia recognized, both on direct appeal and during habeas appeal, that appellate counsel attacked many of the actions taken by trial counsel.  Head v. Ferrell, 274 Ga. at 404 (citing Ferrell v. State, 261 Ga. at 119).  To conclude that appellate counsel was not ineffective in focusing on these other claims is not inconsistent with established federal law.

3.    Failure to Present and Preserve the Batson Claim.  The Petitioner alleges that appellate counsel was deficient for failing to properly show that trial counsel's decision to forego a claim of racially discriminatory peremptory strikes under Batson

---

[9]Moreover, the Respondent notes--and the Petitioner concedes--that trial counsel decided not to present these witnesses at the guilt phase because counsel wanted to retain the right to the final closing argument.  (Resp't Ex. 17 at 131.)  As discussed previously, trial strategy decisions made after investigation of law and fact are virtually unchallengeable.  Strickland, 466 U.S. at 690-91.

v. Kentucky, 476 U.S. 79 (1986), was unreasonable.  Appellate counsel argued on direct appeal that trial counsel's decision not to raise a Batson challenge at trial was unreasonable.  (Resp't Ex. 19 at 32.)  But appellate counsel did not present evidence on appeal to demonstrate that a *prima facie* case under Batson was available to trial counsel.  (Id.)  At the motion for new trial hearing, trial counsel testified that their decision not to raise a Batson challenge was based on their belief that African-American jurors might tend to identify with the victims, both African-Americans.  The Supreme Court of Georgia found this strategy to be reasonable under the circumstances of the Petitioner's case.  Head v. Ferrell, 274 Ga. at 409.  The Petitioner contends that this conclusion runs contrary to the federal law articulated in Batson and its progeny.  Although Batson protects against racial discrimination in jury selection, it does not compel counsel to object on these grounds where counsel believes such objection would disfavor his client.  Nor does it compel counsel to assert a Batson objection where counsel can establish a *prima facie* case for a Batson challenge but, as here, has no good faith basis for this challenge.  The Supreme Court of Georgia's determination that appellate counsel did not provide ineffective assistance by failing to persuade the court that the decision not to raise a Batson challenge at trial was flawed is neither an unreasonable determination of fact nor an unreasonable

application of federal law.  Consequently, relief based upon this claim is not warranted.

4.     Failure to Present Evidence Regarding the "Surprise Witness."  The Petitioner contends that appellate counsel rendered ineffective assistance of counsel by failing to argue adequately that alleged "surprise testimony" was improperly admitted at trial.  See O.C.G.A. § 17-7-110 (applicable at the time of the Petitioner's trial, but since repealed).  The Supreme Court of Georgia denied this claim:

> Because the record does not support Ferrell's present contention that the trial court abused its discretion by allowing him to interview the witness and then allowing the witness to testify, Ferrell cannot show prejudice stemming from appellate counsel's alleged deficient performance.

Head v. Ferrell, 274 Ga. at 410 (citing Thrasher v. State, 265 Ga. 401, 402-03 (1995); White v. State, 253 Ga. 106, 109-10 (1984)).  In Thrasher v. State, the Supreme Court of Georgia made it abundantly clear that "a trial court may allow an unlisted witness to testify if the accused is given an opportunity to interview the witness prior to the time he takes the stand."  Thrasher, 265 Ga. at 402-03 (citing White, 253 Ga. at 109).  This holding is consistent with the overarching purpose of O.C.G.A. § 17-7-110-- ensuring that an accused is not confronted with testimony from a witness whom he has not had the opportunity to interview.  See id. at 402; Hicks v. State, 232 Ga. 393, 399 (1974).  The record indicates--and the Petitioner concedes--that he was provided an opportunity to interview the "surprise witness" before the witness testified.  The trial

court's decision to permit the witness to testify after interview by the Petitioner is wholly consistent with Georgia law. Consequently, it was reasonable for the Supreme Court of Georgia to find that the Petitioner could not show prejudice stemming from appellate counsel's failure to convince the court otherwise.

5.      Failure to Present Claim of Improper Court Closure.  After receiving a complaint from the jury, the trial judge decided to restrict the ingress and egress of spectators at certain times during the guilt-innocence phase of the Petitioner's trial. The Petitioner contends that the judge's *sua sponte* decision to close the courtroom doors denied him his Sixth Amendment right to a public trial.  Appellate counsel failed to argue this claim on direct appeal.  In the state habeas proceedings, the Petitioner argued that appellate counsel's failure to raise this claim on appeal amounted to ineffective assistance.  The Supreme Court of Georgia rejected the Petitioner's claim of ineffective assistance of appellate counsel, suggesting that the underlying claim of improper courtroom closure was meritless.  Head v. Ferrell, 274 Ga. at 410.  The Petitioner now contends that the Supreme Court of Georgia's holding runs contrary to federal law established in Waller v. Georgia, 467 U.S. 39, 45-46 (1984).

In Waller, the United States Supreme Court recognized the importance of ensuring that a defendant's trial be open to the public.  "In addition to ensuring that

judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." Id. at 46 (citing In re Oliver, 333 U.S. 257, 270 n.25 (1948)).  For these reasons, the Court held, *closure* of a hearing is appropriate only where findings suggest that such closure "is essential to preserve higher values and is narrowly tailored to serve that interest."  Id. (quoting Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 510 (1984)).  The Petitioner alleges that the trial judge held no hearing and made no express findings to justify restricting access to the courtroom before making the *sua sponte* decision to close the courtroom doors during portions of the Petitioner's trial.  He contends that locking the doors without making findings adequate to support the action violated his right to a public trial.  Waller, however, is easily distinguishable from this case, as the trial judge's order to limit ingress and egress did not effect a *closure* for Sixth Amendment purposes.  See Herring v. Meachum, 11 F.3d 374, 379-80 (2d Cir. 1993). Members of the public had access to the courtroom before the doors were locked and were present when the trial was conducted.  Spectators had unrestricted access throughout the trial as long as they arrived before the session began.  The Petitioner's trial, thus, remained at all times "public" within the meaning of the Sixth Amendment. The Supreme Court of Georgia determined that the trial judge's reasonable limitations on courtroom movements did not constitute even a partial closing.  This determination

does not run contrary to federal law, as established in <u>Waller</u> and its progeny. Consequently, the Supreme Court of Georgia's determinations that the Petitioner's underlying Sixth Amendment claim is meritless and that his appellate counsel was not ineffective in failing to raise this meritless claim are wholly reasonable interpretations of federal law.  This claim for relief is denied.

6.     Failure to Present Claim of Prejudicial Introduction of Victim Impact Evidence.   The Petitioner alleges that the trial court permitted the prejudicial discussion of victim impact at trial.  The Petitioner contends that this argument could "serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant."  <u>See</u> <u>Booth v. Maryland</u>, 482 U.S. 496, 508 (1987), <u>overruled</u> <u>by</u> <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991).  Appellate counsel raised a claim of ineffective assistance based on trial counsel's failure to object to the introduction of arguments regarding victim impact and victim worth.  (Resp't Ex. 19 at 21, 63-64 (stating that "[c]ounsel was not familiar enough with <u>Booth</u> and [<u>South Carolina v.</u>] <u>Gathers</u>-type claims to make proper objections to evidence or closing argument.").)  The Petitioner claimed at habeas that appellate counsel was ineffective for failing to object to the argument concerning the victims.  The Supreme Court of Georgia denied this claim, holding that the Petitioner "failed to demonstrate deficient performance by his appellate attorney with regard to

her presentation of that claim." <u>Head v. Ferrell</u>, 274 Ga. at 410.  The Petitioner argues that the Supreme Court's determination of the facts is not supported by the record, alleging that appellate counsel unreasonably failed to raise a claim based upon argument regarding the class and wealth of the victims.  A review of the record, however, reveals the Supreme Court of Georgia's determination to be reasonable.  On direct appeal, counsel raised both a general claim of ineffectiveness of trial counsel for failure to object to evidence of victim worth, (Resp't Ex. 19 at 21), and offered an indictment of trial counsel's failure to object to specific arguments regarding status of the victims (<u>id.</u> at 56).  The Petitioner fails to show that the Supreme Court of Georgia's finding was based on an unreasonable determination of the facts in the record or an unreasonable application of relevant federal law.

7.      Failure to Present Claim of Improper Reliance on Prior Convictions.  The state identified four prior convictions for forgery as nonstatutory aggravating circumstances at the Petitioner's trial.  The Petitioner alleges that he is mentally ill and mentally retarded and, for these reasons, that the convictions were the products of unconstitutionally-obtained guilty pleas.   Trial counsel failed to object to the introduction of these convictions.  Appellate counsel did not argue on direct appeal that trial counsel's failure to object constituted ineffective assistance.  The Supreme Court of Georgia held that "appellate counsel's omission of this claim was not

deficient performance, as the evidence available as a result of trial and appellate counsel's observations of Ferrell and their consultations with mental health experts failed to provide credible support for such a claim." Head v. Ferrell, 274 Ga. at 410. The Petitioner contends that this is an unreasonable determination of the facts, alleging that trial and appellate counsel failed to properly investigate the Petitioner's mental health. As discussed in greater depth with respect to the Petitioner's claim of ineffective assistance of counsel at the penalty phase, the Supreme Court of Georgia was not unreasonable to determine that appellate counsel had performed adequately in investigating and presenting evidence of the Petitioner's mental functioning. Head v. Ferrell, 274 Ga. at 407. As appellate counsel was not deficient in failing to acquire evidence of the Petitioner's alleged mental infirmity, she cannot be deemed ineffective for failing to advance a claim that is contingent on such evidence. The Petitioner's claim for ineffective assistance of appellate counsel on this ground fails.

8.     Failure to Present Evidence of Constructive Absence. During the penalty phase charge conference and outside the presence of the jury, the Petitioner suffered what he claims to be a seizure lasting approximately five minutes. He alleges that the trial court's decision not to halt the trial indefinitely following this episode caused the Petitioner's constructive absence from trial. He contends that this constructive absence violated his constitutional right to be present in the courtroom at every stage

-52-

of his trial.  See Illinois v. Allen, 397 U.S. 337 (1970).  Appellate counsel did not raise

this specific claim on direct appeal; rather, counsel asserted that the Petitioner was

denied his right to counsel by his allegedly impaired condition following this episode.

The Petitioner alleges that appellate counsel's failure to raise the former argument on

direct appeal constitutes ineffective assistance of counsel.  The Supreme Court of

Georgia denied this claim, finding that "the fact that such a closely related claim was

actually raised demonstrates that Ferrell's appellate attorney did not perform

unreasonably."   Head v. Ferrell, 274 Ga. at 411.   The Petitioner deems this

characterization of appellate counsel's argument wholly unreasonable, alleging that

appellate counsel only made a general claim that the Petitioner's condition throughout

sentencing amounted to constructive denial of counsel.  Appellate counsel's brief

belies the Petitioner's claim.  Appellate counsel argued that "[c]onstructive denial of

counsel is shown in the . . . failure to object to the lack of defendant's presence at

critical stages of the proceedings."  (Resp't Ex. 19 at 17.)  As the Petitioner was

physically present at all relevant stages of the trial proceedings, appellate counsel

clearly referred to the Petitioner's alleged constructive absence following his seizure.

Consequently, the Supreme Court of Georgia's characterization of appellate counsel's

argument is not, as the Petitioner contends, based on an unreasonable determination

of the facts presented.

The Supreme Court of Georgia offers an alternative reason to deny the Petitioner's claim for relief, stating that the facts presented suggest that appellate counsel would not be able to show that the Petitioner was constructively absent following his seizure. The Court notes that "the evidence at the motion for new trial showed that Ferrell regained his composure and appeared to trial counsel to be 'very much in contact with reality' and that the defense investigator had spoken with Ferrell and reported that he was 'all right' and wished to continue. . . ." Head v. Ferrell, 274 Ga. at 411. The Petitioner offers the conclusory argument that the Court's findings are unreasonable determinations of fact in light of the severity of the seizure and the evidence regarding the Petitioner's mental state. The testimony of those closest to the Petitioner during trial--his counsel and the trial investigator--suggests that the Supreme Court of Georgia's determinations of fact are entirely reasonable. The Petitioner's claim of ineffective assistance of appellate counsel regarding his constructive absence at trial is without merit.

9.    Failure to Present Evidence of Erroneous Jury Instructions at Guilt-Innocence Phase of Trial. The Petitioner alleges that the trial court's instructions to the jury on reasonable doubt in the guilt-innocence phase of the trial were improper. He contends that the terms used by the trial judge to describe "reasonable doubt" overstated the requisite degree of uncertainty required to acquit the defendant, Cage

v. Louisiana, 498 U.S. 39, 40-41 (1990), and thereby violated his Due Process rights

and Sixth Amendment right to trial by jury, Sullivan v. Louisiana, 508 U.S. 275, 278

(1993).  The Petitioner alleges that appellate counsel was ineffective for not properly

raising the issue that trial counsel was ineffective for not objecting to these jury

instructions.   The Supreme Court of Georgia rejected this claim, deeming the

underlying claim--the challenge to the jury instructions--meritless.

   In Cage v. Louisiana, 498 U.S. at 41, the United States Supreme Court held that

a court's unduly restrictive definition of "reasonable doubt" may violate the Due

Process clause.  In Cage, the jurors were told that a reasonable doubt

> is one that is founded upon a real tangible substantial basis and not upon
> mere caprice and conjecture.  *It must be such doubt as would give rise to
> a grave uncertainty,* raised in your mind by reasons of the unsatisfactory
> character of the evidence or lack thereof.  A reasonable doubt is not a
> mere possible doubt.  *It is an actual substantial doubt.*  It is a doubt that
> a reasonable man can seriously entertain.  What is required is not an
> absolute or mathematical certainty, but a *moral certainty*.

Id. at 40 (emphasis in original).  The Supreme Court held that certain aspects of the

instruction, evidenced by the emphasized portions, rendered it unconstitutional:

> It is plain to us that the words "substantial" and "grave" as they are
> commonly understood, suggest a higher degree of doubt than is required
> for acquittal under the reasonable doubt standard.   When those
> statements are then considered with the reference to a "moral certainty,"
> rather than evidentiary certainty, it becomes clear that a reasonable juror
> could have interpreted the instruction to allow a finding of guilt based on
> a degree of proof below that required by the Due Process Clause.

Id. at 41.   Based upon this holding, the Petitioner contends that the trial court's instruction on reasonable doubt was constitutionally invalid, as it equated proof beyond a reasonable doubt with proof "to a moral and reasonable certainty."[10] But use

---

[10]During the guilt-innocence phase of the trial, the trial court gave the jury the following instruction regarding reasonable doubt:

> No person shall be convicted of any crime unless and until each element of the crime is proven beyond a reasonable doubt. -- and to a moral and reasonable certainty.

> The object of all legal investigation is the discovery of the truth.  And the burden of the proof rests upon the State to prove every material allegation of the indictment. -- and every essential element of the crime charged, beyond a reasonable doubt.

> There is no burden of proof upon the defendant, whatever; and the burden never shifts to the defendant to prove his innocence.

> However, the State is not required to prove the guilt of the accused beyond all doubt or to a mathematical certainty.  Moral and reasonable certainty is all that can be expected, in a legal investigation.

> A "reasonable doubt" means just what it says.  It is the doubt of a fair-minded, impartial juror, honestly seeking the truth.  It is a doubt based upon common sense and reason.  It does not mean a vague or arbitrary notion, but is a doubt for which a reason can be given, arising from the consideration of evidence, a lack of evidence, a conflict in the evidence, or a combination of these.

> If, after giving consideration to all the facts and circumstances of this case, your minds are wavering, unsettled, unsatisfied, then that is a doubt of the law, and you should acquit the defendant.

(Trial Tr. 1571-72.)

of the term "moral certainty" terminology does not alone render the trial instructions objectionable. In construing a trial instruction, a court must consider "how reasonable jurors could have understood the charge as a whole." Cage, 498 U.S. at 41 (citing Francis v. Franklin, 471 U.S. 307, 316 (1985)). "The moral certainty to which the Cage instruction referred was clearly related to the defendant's guilt; the problem in Cage was that the rest of the instruction provided insufficient context to lend meaning to the phrase." Victor v. Nebraska, 511 U.S. 1, 21 (1994). In Victor, the Court upheld a Nebraska court's instructions referencing "a moral certainty" because the context of the reference alleviated concerns that this phrase would lead jurors to misunderstand the meaning of "reasonable doubt." Id.; see also Wayne v. State, 269 Ga. 36, 40 (1998) ("The use of the phrase 'moral and reasonable certainty' in a charge which, on the whole, repeatedly and accurately conveys the concept of reasonable doubt does not constitute reversible error.") The instructions considered in Victor reinforced the jury's objective reliance on the evidence presented or lack thereof. Victor, 511 U.S. at 21-22. Here, the instructions given at the Petitioner's trial similarly alleviate concerns that the term "moral certainty" permitted conviction on a standard less onerous than proof beyond a reasonable doubt. The trial judge stated that reasonable doubt "is the doubt of a fair-minded, impartial juror, honestly seeking the truth" and "is a doubt based upon common sense and reason." (Trial Tr. at 1572.)

The instructions at the Petitioner's trial also did not allow the jury to convict on factors other than the evidence at trial.  The trial judge noted that reasonable doubt is "a doubt for which a reason can be given, arising from the consideration of the evidence, a lack of evidence, a conflict in the evidence or a combination of these." (Id.)  Although the trial judge's instructions on reasonable doubt included the term "moral and reasonable certainty," this term did not so infect the instructions as to permit conviction on an unconstitutional standard of proof.  Taken as a whole, the instructions sufficiently conveyed the concept of reasonable doubt to the jury.  The Supreme Court of Georgia's determination that the Petitioner's claim was without merit is a wholly reasonable interpretation of federal law.  His claim for relief for ineffective assistance of appellate counsel on this ground fails.

10.     Failure to Present Evidence of Erroneous Jury Instructions at Penalty Phase of Trial.  The Petitioner claims that he was denied due process and a reliable sentencing hearing due to the trial court's instructions regarding aggravating circumstances during the penalty phase of his trial.  In explaining a form outlining potential aggravating circumstances, the trial judge identified "None" as an option on the form and then described this option: "You can -- you can -- You make no such finding; of course, to make these findings, it must be proven to you by the State, and be revealed to you by the evidence beyond a reasonable doubt."  (Trial Tr. at 1718.)

The Petitioner contends that this charge inadvertently told jurors that they could not make finding that there were no aggravating circumstances.  This alleged confusion, the Petitioner contends, renders the jury instructions constitutionally insufficient.  See Penry v. Lynaugh, 492 U.S. 302, 318 (1989) (requiring jury instructions to be sufficiently clear to give the jury "a vehicle for expressing its reasoned moral response to that evidence in rendering its sentencing decision.").  The Petitioner argues that appellate counsel rendered ineffective assistance by failing to assert this claim on appeal.

The Supreme Court of Georgia denied this claim, holding that the trial court's instruction would not have misled the jury.  Head v. Ferrell, 274 Ga. at 403 (citing Butts v. State, 273 Ga. 760, 770 (2001) (requiring court to evaluate individual charges in light of the charges as a whole)).  Consequently, it held that appellate counsel did not perform deficiently by failing to raise this meritless claim on direct appeal.  Head v. Ferrell, 274 Ga. at 403.  The Supreme Court's determination is based on neither an unreasonable view of the facts nor an unreasonable application of federal law.  Consequently, the Petitioner's claim for relief is denied.

11.    Failure to Present Evidence of Alteration of the Trial Transcript.  The Petitioner alleges that the trial transcript is materially altered and facially unreliable.  He contends that the use of a deficient trial transcript as the basis for his sentence

violates the Eighth and Fourteenth Amendments to the United States Constitution.

The Petitioner alleges that appellate counsel was deficient for failing to raise this issue

on appeal.  The Supreme Court of Georgia denied this claim for ineffective assistance

of appellate counsel, noting: "Ferrell, even after being granted access to audiotapes

of his trial, has failed to show anything about the transcription of his trial that

appellate counsel could have argued that would in reasonable probability have

changed the outcome of his direct appeal." Head v. Ferrell, 274 Ga. at 411.[11]  Review

of the record suggests that the Petitioner has had ample time and multiple

opportunities to review his trial transcript, compare the trial transcript to the audio

tapes of the Petitioner's criminal trial, and raise any constitutional allegations based

on the transcription in his state habeas corpus proceedings.[12]  He has failed to do so.

And he has failed to identify any *material* inaccuracies within the transcript that

_____

[11]Again, it bears mentioning that the Supreme Court of Georgia was in a particularly advantageous position to determine whether any failings of the transcript presented at the habeas proceeding would have affected the disposition of the Petitioner's direct appeal, as the Supreme Court of Georgia itself heard and ruled on the Petitioner's direct appeal.

[12]The Petitioner argues that he was given no meaningful access to the audio tapes, as he could not pay for a complete retranscription of the trial proceedings.  A complete retranscription, however, is not necessary to identify discrepancies between the audio tapes and the written transcript.  Rather, the Petitioner could evaluate the accuracy of the transcript simply by listening to the tapes and comparing the testimony to that printed in the transcript.

render the record unreliable.   Consequently, the Petitioner's claim based on inaccuracies within the trial transcript fails.

12.    Failure to Present Evidence of Racial Bias at Trial.   The Petitioner alleges that his conviction and sentence of death are unconstitutional because considerations of race permeated the proceedings.   He contends that race played a role in the prosecutor's decision to seek the death penalty, that the prosecution's peremptory strikes were racially motivated, and that the transcript is suffused with racial bias.   He alleges that appellate counsel was ineffective in failing to raise this general claim on direct appeal.   In specifically rejecting this claim, the Supreme Court of Georgia held:

> Ferrell has failed to demonstrate that the prosecutor's decision to seek the death penalty against him was racially motivated or that racial discrimination infected his trial in other ways.   Accordingly, his claim that appellate counsel rendered ineffective assistance in failing to make such arguments beyond those she actually raised on direct appeal must fail.

Head v. Ferrell, 274 Ga. at 411.   The Petitioner has failed to present any evidence supporting his claim that the prosecutor's decision to seek the death penalty was racially motivated.   And the Petitioner has not presented any evidence to persuade the court to reconsider its determinations regarding his Batson claim and his claim based on deficiencies within the transcript.   As the Petitioner has failed to present any evidence supporting this independent claim that the proceedings were tainted by

considerations of race, the state court's rejection of this claim was not an unreasonable determination of the facts.

13.    Cumulative Effect of Errors.  As the aforementioned allegations indicate, the Petitioner alleges that trial counsel made numerous errors.  He contends that the cumulative errors rendered the jury's findings unreliable.  He also alleges that appellate counsel failed to present evidence and argument on trial counsel's cumulative errors, so that counsel's effectiveness could be examined "under all the circumstances."  Strickland, 466 U.S. at 690.  The Supreme Court of Georgia denied the Petitioner's claim, finding that "[o]n direct appeal, Ferrell's appellate attorney argued and cited relevant case law for the proposition that this Court should consider trial counsel's alleged deficiencies in light of the totality of their representation." Head v. Ferrell, 274 Ga. at 411.   Appellate counsel specifically articulated the Strickland standard when outlining trial counsel's alleged deficiencies.  (Resp't Ex. 19 at 16 ("In deciding whether specific acts are deficient, the court must look to the totality of the circumstances, 'reviewing the quality of counsel's assistance from the time of initial retention through the time of appeal.'") (citing House v. Balkcom, 725 F.2d 608 (11th Cir. 1984)).)  Moreover, appellate counsel argued that "the aggregate of error in this case" required the court to vacate the Petitioner's sentence.  As appellate counsel clearly addressed the cumulation of trial counsel's alleged errors,

the Supreme Court of Georgia's determination that she did not provide ineffective counsel was not an unreasonable determination in light of the facts presented.

The Supreme Court of Georgia denied the Petitioner's claims of ineffective assistance of appellate counsel. As discussed above, the Supreme Court's holdings relied neither on unreasonable application of federal law or unreasonable determinations of fact. Consequently, habeas relief based upon the Petitioner's claim of ineffective assistance of appellate counsel is improper and thereby denied.

        F.     Claim VI – Trial Court's Refusal to Grant Funds for MNT Investigator

Findings of procedural default are to be accorded deference by federal habeas courts. See Mincey v. Head, 206 F.3d 1106, 1135 (11th Cir. 2000); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977). In Coleman v. Thompson, the Supreme Court of the United States held that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750. The Respondent contends that Claims VI, VII, VIII, X, and XI of the petition have been deemed procedurally defaulted by the state courts on independent and adequate state law grounds. Hence, the Respondent argues that the

Petitioner must demonstrate cause for the default and resulting prejudice for this Court to address these claims on the merits.

In Claim VI of the petition, the Petitioner alleges that the trial court erred in refusing to give appellate counsel funds for an investigator at the motion for a new trial. The Supreme Court of Georgia found this claim to be procedurally defaulted, as the Petitioner failed to raise the claim on direct appeal. Head v. Ferrell, 274 Ga. at 402. The Petitioner contends that appellate counsel's failure to raise this claim on direct appeal constitutes cause to excuse any default. Ineffective assistance of counsel may be cause for a procedural default. Murray v. Carrier, 477 U.S. 478, 488 (1986). However, "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." Id. at 492. "To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Id. The Petitioner makes only the conclusory assertion that appellate counsel provided ineffective assistance of counsel. He fails to show that appellate counsel's failure to assert this due process claim on appeal "fell below an objective standard of reasonableness" or otherwise constituted ineffective assistance of counsel. See Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 688. Nor does the Petitioner contend that any external obstacle barred appellate counsel from

raising this due process claim on direct appeal.  Appellate counsel's failure to recognize the factual or legal basis for this due process claim and resultant failure to raise the claim does not provide cause for a procedural default.  As the federal claim was defaulted in state court and the Petitioner fails to show legitimate cause for such default, federal habeas review of this claim is barred.

      G.    Claim VII – Unlawful Use of Peremptory Strikes (Batson)

The Petitioner alleges that the prosecutor violated the mandate of Batson v. Kentucky, 476 U.S. 79 (1986), by using peremptory challenges in a racially discriminatory manner.  The state habeas corpus court found this claim to be procedurally defaulted, and the Supreme Court of Georgia upheld the lower court's holding.  Head v. Ferrell, 274 Ga. at 402.  The Petitioner contends that his Batson claim should not be procedurally defaulted, alleging that appellate counsel indirectly raised the claim on direct appeal by arguing that trial counsel was ineffective for failing to raise or preserve a Batson challenge at trial.[13]  But it is not enough that the Petitioner introduced similar facts or raised a similar claim before the state courts.  See Anderson v. Harless, 459 U.S. 4, 6 (1982).  A federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal principles to the facts

_____

      [13]It is indeed as absurd as it sounds to suggest that the Petitioner has preserved his Batson claim by arguing at direct appeal that counsel failed to preserve the Batson claim at trial.

bearing upon the petitioner's constitutional claim.  Id.; see also 28 U.S.C. § 2254.  In

order to give the states meaningful initial say, a habeas petitioner must have "fairly

presented" to the state court the substance of his federal habeas claim.  Anderson, 459

U.S. at 6.  The Petitioner contends that the Supreme Court of Georgia addressed the

substance of the Batson claim and, thus, that no valid default exists.  This is an

inaccurate representation of the Supreme Court of Georgia's opinion.  The court's

Batson discussion revolved exclusively around whether trial counsel's strategic

decision not to raise a Batson challenge was justified.  The court did not reach the

merits of a Batson challenge.  Hence, it is proper to defer to the court's finding that

the Petitioner's Batson claim is procedurally defaulted.

The Petitioner attempts to show cause to excuse this default.  As above, the

Petitioner contends that appellate counsel's failure to raise this claim on direct appeal

constitutes ineffective assistance of counsel.  And, as above, the Petitioner fails to

show that appellate counsel's failure to assert this due process claim on appeal "fell

below an objective standard of reasonableness" or otherwise constituted ineffective

assistance of counsel.  See Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 688.  Nor

does the Petitioner contend that any external obstacle barred appellate counsel from

raising this due process claim on direct appeal.  As the federal claim was defaulted in

state court and the Petitioner fails to show legitimate cause for such default, federal habeas review of this claim is barred.

      H.    <u>Claim VIII – Material Alteration/Unreliability of Trial Transcript</u>

The Petitioner alleges that the trial transcript is materially altered and facially unreliable.  He contends the use of a deficient trial transcript as the basis for his sentence violates the Eighth and Fourteenth Amendments to the United States Constitution.  The Supreme Court of Georgia held that this claim was procedurally defaulted.  <u>Head v. Ferrell</u>, 274 Ga. at 402.  The Petitioner contends that his transcript claim is not procedurally defaulted because, he alleges, the state court addressed the merits of the claim in considering his claim of ineffective assistance of appellate counsel.  The Supreme Court of Georgia found that the Petitioner, "even after being granted access to audiotapes of his trial, has failed to show anything about the transcription of his trial that appellate counsel could have argued that would in reasonable probability have changed the outcome of his direct appeal."  <u>Id.</u> at 411. Here, unlike the <u>Batson</u> claim above, the Court confined its brief analysis of this claim to the Petitioner's failure to demonstrate that he was prejudiced by the ineffective assistance of appellate counsel.  But, in doing so, the state court did not reach the merits of the Petitioner's claim.  Rather, the claim before the state court involved only whether appellate counsel was ineffective in her failure to demonstrate the inadequacy

of the trial transcript.  As discussed previously, it is not enough that the Petitioner introduced similar facts or raised a similar claim before the state courts.  Anderson, 459 U.S. at 6.  A federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing upon the petitioner's constitutional claim.  Id.; see also 28 U.S.C. § 2254.  The claim for ineffective assistance of counsel requires application of legal principles and standards wholly distinct from those governing a direct claim that the trial transcript is constitutionally invalid.  The state court did not have the opportunity to address the Petitioner's constitutional claim that the trial transcript is materially unreliable and thereby violates his Eighth and Fourteenth Amendment rights.  The claim is thus procedurally defaulted.

The Petitioner attempts to show cause to excuse this default.  As above, the Petitioner contends that appellate counsel's failure to raise this issue on direct appeal and ensure the accuracy of the record constitutes ineffective assistance of counsel.  And, as above, the Petitioner fails to show that appellate counsel's failure to assert this due process claim on appeal "fell below an objective standard of reasonableness" or otherwise constituted ineffective assistance of counsel.  See Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 688.  The Petitioner does not contend that any external obstacle barred appellate counsel from raising this due process claim on direct appeal.

As the federal claim was defaulted in state court and the Petitioner fails to show legitimate cause for such default, federal habeas review of this claim is barred. The Petitioner's claim for relief is properly denied.

>    I.    Claim IX - Victim Worth Evidence

The Petitioner alleges that he was denied due process by the introduction of evidence at trial relating solely to victim worth. He contends that the introduction of such prejudicial evidence violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The Petitioner raised this issue on direct appeal. On appeal, the Supreme Court of Georgia found "no abuse of discretion in the trial court's rulings on the admissibility of evidence and testimony" and "no merit to Ferrell's 10th and 11th enumerations of error, complaining of alleged prosecutorial misconduct and improper argument." Ferrell v. State, 261 Ga. at 121. This is not contrary to or an unreasonable application of federal law. See Payne v. Tennessee, 501 U.S. 808 (1991).

>    J.    Claim X – Courtroom Closure During Trial

The Petitioner alleges that the trial court improperly locked the courtroom during the Petitioner's trial proceedings. He contends that by closing parts of the trial, the trial court denied the Petitioner his Sixth Amendment right to a public trial. The state habeas corpus court found this claim to be procedurally defaulted, and the

Supreme Court of Georgia upheld the lower court's holding.  Head v. Ferrell, 274 Ga. at 402.  The Petitioner does not dispute that the claim is procedurally defaulted. Rather, the Petitioner attempts to show cause to excuse this default.  As above, the Petitioner contends that appellate counsel's failure to raise the claim on direct appeal constitutes ineffective assistance of counsel.  And, as above, the Petitioner does not show that appellate counsel's failure to assert this due process claim on appeal "fell below an objective standard of reasonableness" or otherwise constituted ineffective assistance of counsel.  See Wiggins, 539 U.S. at 521; Strickland, 466 U.S. at 688.  Nor does the Petitioner contend that any external obstacle barred appellate counsel from raising this Sixth Amendment claim on direct appeal.  As the federal claim was defaulted in state court and the Petitioner fails to show legitimate cause for such default, federal habeas review of this claim is barred.[14]

K.  Claim XI – "Reasonable Doubt" Instruction at Guilt-Innocence Phase

The Petitioner alleges that the trial court's instructions to the jury on reasonable doubt in the guilt-innocence phase of the trial were improper.  He contends that the

---

[14]The Petitioner argues that the closure of the courtroom created fundamental structural error and that, as a result, prejudice need not be proven.  See Waller, 467 U.S. at 46 (public trial encourages witnesses to come forward and discourages perjury).  He does not appear to contend that the alleged locking of the courtroom resulted in a manifest injustice.  Consequently, even if prejudice need not be shown, cause for the procedural default must lie before this Court can review the claim.  The Petitioner shows no such legitimate cause for default.

terms used by the trial judge to describe "reasonable doubt" overstated the requisite degree of uncertainty required to acquit the defendant, <u>Cage v. Louisiana</u>, 498 U.S. 39, 40-41 (1990), and thereby violated his Due Process rights and Sixth Amendment right to trial by jury, <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 278 (1993).  The state habeas corpus court found this claim to be procedurally defaulted.  The Supreme Court of Georgia upheld the lower court's decision, finding that the Petitioner had failed to raise the issue on direct appeal.  <u>Head v. Ferrell</u>, 274 Ga. at 402.  The Petitioner contends that he presented this claim--that the charge at the guilt-innocence phase violated due process--on direct appeal.  On appeal, counsel stated that "[r]easonable doubt . . . used the customary language--"wavering, unsettled, unsatisfied"--which does not properly describe the degree of doubt necessary." (Resp't Ex. 19 at 40.)  Appellate counsel did not cite to the relevant Supreme Court decision, <u>Cage v. Louisiana</u>, but this omission is excused, as <u>Cage</u> had not been decided when counsel filed her brief.[15]  Moreover, the Supreme Court of Georgia, after characterizing the Petitioner's charge claim as procedurally defaulted, addressed the substance of the Petitioner's charge claim and expressly deemed the claim to be

---

[15]The Supreme Court issued its opinion in <u>Cage</u> on November 13, 1990.  The Petitioner's direct appeal was docketed on September 24, 1990, and argued on November 19, 1990--less than a full week after the <u>Cage</u> decision was issued.

meritless.[16]  Where, as here, a state court opinion finds default and decides a claim on the merits without clearly and expressly identifying the latter ruling as an alternative holding, there is no default.  Heath v. Jones, 941 F.2d 1126, 1137 (11th Cir. 1991), cert. denied, 502 U.S. 1077 (1992) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)).  As the Petitioner's claim that the trial instructions were constitutionally improper was raised in direct appeal and was considered on the merits by the state courts, it is not subject to procedural default and is thus properly before this Court.  As discussed with regard to the ninth ground supporting Claim V, jury instructions on reasonable doubt may reference "a moral certainty" if the context of the reference allows the jurors to understand the meaning of reasonable doubt.  See Victor, 511 U.S. at 21.  The Supreme Court of Georgia made the well-reasoned finding that the instructions regarding reasonable doubt given at the trial and penalty phases, taken as a whole, accurately conveyed the concept of reasonable doubt to the jury.  The Petitioner's claim based upon these instructions is not procedurally defaulted.  Rather, as discussed previously, this claim is without merit.

---

[16]"Ferrell's argument regarding the trial court's charge on reasonable doubt during the sentencing phase is addressed above and shown to be without merit.  The similar argument with regard to the guilt-innocence phase charge on reasonable doubt is also meritless."  Head v. Ferrell, 274 Ga. at 411.

L.   Claim XII – Aggravating Circumstance Instructions During Penalty Phase

The Petitioner claims that he was denied due process and a reliable sentencing due to the trial court's instructions regarding aggravating circumstances during the penalty phase of his trial.  The Supreme Court of Georgia denied this claim, holding that, in the context provided, the trial court's instruction would not have misled the jury.  Head v. Ferrell, 274 Ga. at 403 (citing Butts v. State, 273 Ga. 760, 770 (2001) (requiring court to evaluate individual charges in light of the charges as a whole)).  As discussed with regard to the tenth ground supporting Claim V, the Supreme Court of Georgia's determination is based neither on an unreasonable view of the facts nor on an unreasonable application of federal law.  Consequently, the Petitioner's claim for relief is denied.

M.   Claim XIII – "Reasonable Doubt" Instruction at Penalty Phase

The Petitioner alleges that the trial court's instructions to the jury on reasonable doubt in the penalty phase of the trial were improper.  These instructions echo those presented by the trial judge at the guilt-innocence phase of the Petitioner's trial.  As he argued with respect to the guilt-innocence phase, the Petitioner contends that terms used to describe "reasonable doubt" overstated the requisite degree of uncertainty required to acquit the defendant and thereby violated his Due Process rights and Sixth Amendment right to trial by jury.  See Sullivan, 508 U.S. at 278; Cage, 498 U.S. at 41.

-73-

Specifically, the Petitioner argues that the trial judge's reference to "moral and reasonable certainty" impermissibly lessened the state's burden of proof in the eyes of the jury.  Recognizing that this phrase is not to be isolated, but to be read in the context of the instructions, the Supreme Court of Georgia denied the Petitioner's claim and held that "the sentencing phase charge on reasonable doubt in Ferrell's case was, when read as a whole, not constitutionally deficient." Head v. Ferrell, 274 Ga. at 403 (citing Wayne, 269 Ga. at 40).  This holding is not, as the Petitioner erroneously contends, contrary to the United States Supreme Court's decision in Cage v. Louisiana, 498 U.S. 39 (1990).  The Supreme Court of Georgia's finding that the jury instructions, when viewed as a whole, sufficiently conveyed the concept of reasonable doubt to the jury is based on neither an unreasonable view of the facts nor an unreasonable application of controlling federal law.  The Petitioner's claim for relief is denied.

N.    Claim XIV – Constructive Absence from Trial

The Petitioner alleges that the trial court's decision not to halt the trial indefinitely following the Petitioner's seizure caused his constructive absence from the trial.  He contends that this constructive absence violated his constitutional right to be present in the courtroom at every stage of his trial.  See Illinois v. Allen, 397 U.S. 337 (1970).  The Supreme Court of Georgia found this claim to be procedurally

-74-

defaulted, as the Petitioner failed to raise the claim on direct appeal.  <u>Head v. Ferrell</u>,

274 Ga. at 402.  The Petitioner concedes that he did not raise the claim on appeal, but

contends that the claim is not defaulted because the Supreme Court of Georgia,

despite finding procedural default, also addressed the merits of the claim.  As

discussed above, where a state court finds default but continues to decide a claim on

the merits without clearly identifying the latter ruling as an alternative holding, there

is no default.  <u>Heath</u>, 941 F.2d at 1137 (citing <u>Harris</u>, 489 U.S. at 263).  The Supreme

Court of Georgia did not decide the Petitioner's present constructive absence claim,

but only the "related claim that appellate counsel could have successfully argued

Ferrell's constructive absence."   <u>Head v. Ferrell</u>, 274 Ga. at 411.  As discussed

previously, it is not enough that the Petitioner introduced similar facts or raised a

similar claim before the state courts.  <u>Anderson</u>, 459 U.S. at 6.  A federal habeas

petitioner must provide the state courts with a fair opportunity to apply controlling

legal principles to the facts bearing upon the petitioner's constitutional claim.  <u>Id.</u>; <u>see</u>

<u>also</u> 28 U.S.C. § 2254.  The claim for ineffective assistance of counsel requires

application of legal principles and standards wholly distinct from those governing a

direct claim of constructive absence.  The state court did not have the opportunity to

address the Petitioner's claim of constructive absence.  The claim is procedurally

defaulted.  The Petitioner's claim for relief is properly denied.

## IV.  CONCLUSION

For the reasons set forth above, the First Amended Petition for Writ of Habeas Corpus by a Person in State Custody [Doc. 34] is DENIED.

SO ORDERED, this 16 day of November, 2005.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge